RECEIVED
USDC CLERK, CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

2007 DEC 27 P 2: 28

Marilyn Manente,                    )      C. A. No. 2:06-2357-PMD-RSC
                                    )
              Plaintiff,            )
                                    )
          -versus-                  )      **REPORT AND RECOMMENDATION**
                                    )
Belk, Inc.,                         )
                                    )
              Defendant.            )

    This employment discrimination case alleging violations of
the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et. seq.
with an appended state law claim is before the undersigned United
States Magistrate Judge for a report and recommendation on the
defendant's motion for summary judgment filed on August 13, 2007.
28 U.S.C. § 636(b).

    The plaintiff, Marilyn Manente, filed this action against
her former employer, Defendant Belk, Inc., in state court and it
was removed here timely on August 23, 2006.  The plaintiff
originally brought four (4) causes of action:

        1. breach of contract or promissory estoppel
        2. wrongful demotion in violation of the FMLA,
        3. Wrongful termination in violation of public policy
        4. Third party interference with a contractual relationship

The first and third causes of action were dismissed without
opposition by order of the Honorable P. Michael Duffy, United
States District Judge, on December 1, 2006.

    Discovery is complete and oral argument on the motion was

1

had before the undersigned on September 6, 2007.  Hence it
appears that consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first
must find that "there is no genuine issue as to any material
fact." Fed.R.Civ.P. 56(c).  The judge is not to weigh the
evidence, but rather to determine if there is a genuine issue for
trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
If no material factual disputes remain, then summary judgment
should be granted against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case and on which the party bears the burden of
proof at trial.  Celotex Corp. v. Cattrett, 477 U.S. 317 (1986).
All evidence should be viewed in the light most favorable to the
non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d
121, 123-23 (4th Cir. 1990).  Once a motion for summary judgment
is properly made and supported, the opposing party has the burden
of showing that a genuine dispute exists.  Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).
"[W]here the record taken as a whole could not lead a rational
trier of fact to find for the non-moving party, disposition by
summary judgment is appropriate." Teamsters Joint Council No. 83
v. CenTra, Inc., 947 F.2d 115, 119 (4th Cir. 1991); Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Unsupported

2

speculation is not enough to withstand a motion for summary judgment. <u>Ash v. United Parcel Service, Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir. 1982).

## FACTS

### <u>Plaintiff's claim that she was "demoted" when she returned from FMLA leave</u>

Plaintiff had been a sales associate working at Belk, Inc., a department store since 1998. For seven years prior to taking FMLA leave to have surgery, Plaintiff had been assigned to sell Ralph Lauren sportswear in the better sportswear area of the Woman's Apparel department of the Belk's store at Citadel Mall in Charleston, South Carolina. While she was on FMLA leave, the defendant made a decision to shift its merchandise focus away from high end Lauren product to more moderately priced Liz Claiborne product. Plaintiff has not forecast any evidence to indicate that Belk actually did not make this merchandising decision.

Thereafter, when Plaintiff returned from FMLA leave in August 2005, she was assigned to sell Liz Claiborne sportswear in the moderate sportswear area of the Woman's Apparel department.

3

She was paid the same hourly rate at the same store, had the same title of Sales Associate, worked in the same department, had the same supervisor, had the same sales goals, and she retained all the other benefits to which she was entitled before her FMLA leave.

However, Plaintiff "felt" that being a designated salesperson for higher priced sportswear by Lauren was more financially beneficial to her than being assigned as a sales associate for a more moderately priced sportswear brand, Claiborne. Plaintiff considered that her assignment to sell Claiborne was "almost like a demotion." (Pl. depo. p. 149).

Belk's sales associates are evaluated based on the number of sales dollars which they generate per hour worked. The dollars per hour are then evaluated against prior year's sales per hour and the hourly rate of pay is adjusted up or down based on that comparison. Plaintiff resigned on August 28, 2005, two weeks and two days after she returned from leave. Plaintiff quit too quickly to know if her income would actually have gone up, down or remained the same selling Claiborne rather than Lauren.

There is no way to know if her theory was correct. (Pl. dep. p. 118). Following her resignation from the defendant, she immediately went to work at Saks Fifth Avenue making $5.00 per hour more than she did at any time at Belk and she received better employee benefits from Saks.

4

However, after she was assigned to sell Liz Claiborne sportswear, she could not remain the "designated Lauren specialist" and this caused her to be ineligible for benefits provided her by Polo Ralph Lauren Corporation, the company which manufactures and distributes the Lauren line.    Plaintiff deposed that if sales were high, Polo could provide her annually up to three thousand dollars ($3000.00) in Lauren clothing sent directly to her home by Polo, a one thousand dollar ($1000.00) financial incentive, and a payment of five hundred dollars ($500.00) to defray the income tax consequences of the value of the clothing and financial incentive.

Plaintiff's claim that Defendant tortiously interfered with a contract

Polo Ralph Lauren Corporation had no written contract with the plaintiff.  However, years previously, Lauren was marketed by another and unrelated entity, the Jones Apparel Group, which did have a contract with the plaintiff until Jones ceased distributing Lauren and was replaced by Polo.  Plaintiff appears to rely on the defunct Jones contract to bind Polo, as well as Belk, although there is no evidence of record that Belk was a party to the Jones/Plaintiff agreement.  Additionally, it is undisputed that Jones Apparel Group played no part in the terms and conditions of employment of Belk and its sales associates. (McWatters' Aff. ¶¶ 7-9.)  Neither did Jones have any part in

5

Belk's employee handbooks, Belk's performance evaluations of its sales associates or their pay rates. (Pl.'s Dep. at 46-47, 50-54, 56-58, 111.)  In short, the Jones Apparel document had no impact on Plaintiff's employment with Belk because Belk provided no additional pay, status or benefits of any kind to Plaintiff based on any arrangement between she had with Jones Apparel Group or Polo Ralph Lauren or her selection as a "designated Lauren seller."

**FMLA LAW**

The FMLA provides twelve (12) weeks of unpaid leave per year for eligible employees for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The FMLA also forbids an employer from interfering with the exercise of the rights which it protects. 29 U.S.C. § 2615(a)(1).

Under the FMLA, an employee is entitled to take reasonable leave for medical and other reasons in a manner that accommodates the legitimate interests of their employer. 29 U.S.C. § 2612. The FMLA requires that when the employee returns from FMLA leave the employer restore the employee to their former position of employment or an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. See 29 U.S.C. § 2614(a)(1)(A) and (B).  However, while the FMLA does require employers to restore employees to the position of employment held

6

by the employee when the leave commenced or to an equivalent position, it does not require that an employer provide a returning employee any right, benefit, or position of employment to which the employee would not have been entitled even if the employee had never taken leave. 29 U.S.C.§ 2614(a)(3)(B). See 29 C.F.R. § 825.216(a) ["An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA."]

## TORTIOUS INTERFERENCE WIWTH CONTRACT

Plaintiff also alleges that, because of Belk's alleged failure to reinstate her to an equivalent position upon her return from her FMLA leave, Belk had tortiously interfered with an alleged contract she had with a third party, Jones Apparel Group, Inc., or Polo.

In order to prevail on a tortious interference with a contract calim, a plaintiff must show: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages. Camp v. Springs Mortg. Corp., 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993).

## DISCUSSION

A review of the record and relevant case law indicates that the defendant's motion should be granted.

7

The defendant appears to have complied with the requirements of the FMLA even though Plaintiff was assigned to sell a different brand of sportswear following her FMLA leave and following the defendant's decision to build its business in moderate sportwear and downplay its better sportswear business. Here, as soon as released by her doctor, Plaintiff returned to the same full-time schedule that she worked before her FMLA leave began. (Pl. Dep. at 115:7-25, 116:1.)  Plaintiff was also assigned to the same store location, the Citadel Mall store, after returning from her FMLA leave. (Pl. Dep. at 116:2-4.) Plaintiff was returned to the same floor and the same Women's Apparel department within the Belk Citadel Mall store. (Pl. Dep. at 116:5-6.)  Plaintiff's entitlement to vacation, holidays and other similar benefits all remained the same after she returned from FMLA and she also earned the same hourly rate after her leave ended. (Pl. Dep. at 116:22-25, 117:1-9, 117:19-24.) Defendant's performance goals for Plaintiff and other work expectations remained the same after her FMLA leave. (Pl. Dep. at 117:25, 118:1.)  Her supervisor remained the same, as did her opportunities for promotion.  Lastly, there is no evidence that Plaintiff would have earned less money[1] selling Claiborne; Plaintiff's sheer speculation is insufficient to defeat the

---

[1] Plaintiff made more money with better benefits when she began her employment with Saks Fifth Ave. which commenced immediately after she resigned her employment with the defendant.

8

defendant's well supported summary judgment motion.

Under these facts, it appears that when the plaintiff returned from FMLA leave the defendant restored her to her former position of employment or an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. See 29 U.S.C. § 2614(a)(1)(A) and (B).  Again, an employee does not have entitlement to restoration of her pre-leave position after taking FMLA leave, but only that she is reinstated to an equivalent position. Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 549 (4th Cir. 2006).  "Examples of terms and conditions that should be equivalent are the employee's work schedule or [her] place of work: physical and temporal aspects of the job." Csicsmann v. Sallada, 211 Fed App'x 163, 166 (4th Cir. 2006) (internal citation omitted).  Additionally, here the only evidence is that the decision to downplay Lauren would have been made even if the plaintiff had never taken FMLA leave. 29 U.S.C.§ 2614(a)(3)(B). See 29 C.F.R. § 825.216(a) ["An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA."]  In sum, the plaintiff is not entitled to relief on her FMLA cause of action.

Likewise, it also appears that based on the undisputed facts of record, Defendant is entitled to summary judgment on Plaintiff's tortious interference with contract cause of action.

9

Here, in 2000, Plaintiff and Jones signed a document confirming that she would be a Jones "Designated Seller." Plaintiff claims this was a "contract" between herself and Jones, but not Belk. (Pl. Dep. at 59:5-7.) The Jones document agreed to provide up to a yearly $3,000 clothing allowance as well as a $1,000 bonus that was contingent on Plaintiff reaching Jones' sales plan goals. The Jones document also provided that eligible Designated Sellers may receive a $500 reimbursement for tax liability resulting from the clothing allowance. There was nothing in the Jones document that required Belk do anything; Belk was in no way bound to continue Plaintiff as the designated Lauren salesperson. Belk was not involved in the Jones clothing allowance, the Jones bonus, the Jones sales plan goals or the Jones tax reimbursements. Belk had no involvement in drafting or administering any part of the Jones agreement. (Pl. Dep. at 111:1-11.)

Importantly, Plaintiff's agreement between herself and Jones ended before 2005. Prior to December 31, 2003, Ralph Lauren had entered into a licensing agreement with Jones and as a part of that licensing agreement, Jones obtained the rights to manufacture and sell Ralph Lauren clothing to retailers including Defendant. On December 31, 2003, the licensing agreement between Ralph Lauren and Jones ended. (Motwani Aff. ¶ 3.) Thereafter, Jones no longer sold Ralph Lauren clothing to Defendant and had

10

no relationship to Plaintiff; any agreements for sales associates who were Ralph Lauren Designated Sellers through Jones ended. (Id.)  Plaintiff admits that, besides the 2000 agreement with Jones Apparel, which was no longer in effect after 2003, she never had another contract with Jones Apparel. (Pl. Dep. at 99:9-11.)  Further, she did not have a contract with Polo Ralph Lauren Corporation. (Pl. Dep. at 99:4-8.)

Plaintiff voluntarily resigned effective August 25, 2005, to take a better job and Plaintiff admits that the only possible "loss" "arose from the loss of a $4,500 per year ($3,000.00 clothing allowance, $1,000 bonus, $500 tax adjustment.)" (See Pl's Resp. to Interrog. No. 9.)

In short, Belk was not a party to any contract Plaintiff had with Jones and that contract ended years prior to Plaintiff's resignation.  There was simply no contract with which Belk could interfere.  Even if the court accepted Plaintiff's invitation to speculate that the Jones contract somehow continued through Polo, Belk was not required to continue to employ Plaintiff, much less maintain her as a designated Lauren salesperson.  The defendant is entitled to judgment as a matter of law.

11

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendant' summary judgment motion be granted on all causes of action and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

December **27**, 2007