**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MARILYN MANENTE,           )<br>                                                  )<br>                    Plaintiff,      )<br>                                                  )     C.A. No.: 2:06-CV-2357<br>v.                                              )<br>                                                  )<br>                                                  )     **ORDER**<br>BELK, INC.;                              )<br>                                                  )<br>                    Defendant.  )<br>_____) | |

This matter is before the court on Plaintiff Marilyn Manente's Objections to the Report and Recommendation of a United States Magistrate Judge. Plaintiff originally filed a Complaint on July 21, 2006, which was removed to this court on August 24 by Defendant Belk, Incorporated. Two of Plaintiff's original four causes of action were dismissed by this court in an order dated December 1. After the completion of discovery, Defendant filed a Motion for Summary Judgment on the remaining two causes of action, for a violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et. seq., and for interference with a contractual relationship, on August 13, 2007, to which Plaintiff filed a Response in Opposition on September 14. The matter was referred to a United States Magistrate Judge, who issued a Report and Recommendation to this court on December 27, recommending that this court grant Defendant's Motion for Summary Judgment.

Plaintiff filed Objections to the Report and Recommendation on January 13, 2008. On January 31, Defendant filed a response to the Plaintiff's Objections.

For the reasons set forth herein, this court adopts in full the recommendations of the Magistrate Judge and grants Defendant's Motion for Summary Judgment.

**FACTUAL BACKGROUND**

Plaintiff Marilyn Manente ("Manente") began working at a department store owned by Defendant Belk Inc. ("Belk") in 1998. Manente was employed as a salesperson, and specifically was assigned to the better sportswear division of the Women's Apparel department, selling the Ralph Lauren line of clothing.

For part of her tenure as a salesperson at Belk, Ralph Lauren clothing was marketed to Belk by Jones Apparel Group, Inc. ("Jones"). During this time period, Jones had a contract with Manente, who had been designated as the salesperson responsible for selling Ralph Lauren clothing at that particular Belk location. This contract provided Manente with certain benefits, provided she met agreed upon sales goals. If Manente met her sales target, she received $3000 in complimentary Ralph Lauren clothing, a $1000 bonus, and $500 to offset the tax consequences of the free clothing and the financial bonus. This contract was strictly between Jones and Manente, and Belk was not a party to the agreement. On December 31, 2003, the agreement between Ralph Lauren and Jones ended, and Jones no longer provided Ralph Lauren clothing to Belk. This also meant that Manente no longer had a contract with Jones, and Manente acknowledges that for some time after this she no longer received complimentary Ralph Lauren clothing.

In May 2005, Manente needed knee surgery and requested, and was granted, FMLA leave to have the procedure done. She returned from the surgery in July 2005 on a part-time basis (per her physician's instructions) until she was approved to work on a full-time basis. At this time, Manente was restored to her position as a sales associate at Belk, working for the same supervisor, working the same hours and schedule, and receiving the same pay and benefits. Upon her return, however, Manente was no longer responsible for selling Ralph Lauren brand clothes, but was instead was assigned to sell Liz Claiborne brand clothing. This was due to a storewide policy to change

focus from high-end brands like Ralph Lauren in favor of more reasonably priced brands of clothing. The Liz Claiborne brand is generally viewed as less fashionable than the Ralph Lauren brand, and the Claiborne clothes were less expensive. In deposition testimony, Manente stated that she felt that the change in her position was "almost like a demotion." Manente asserts that during this time period, even though her contract with Jones had admittedly expired, she once again began to receive free clothing from Ralph Lauren, just as she had under her contract with Jones.

On August 24, 2005, upset at the change in her position, Manente resigned from Belk, effective the next day. Shortly thereafter, Manente obtained a job as a salesperson at Saks Fifth Avenue, where she receives approximately five dollars more in salary per hour than she had received working at Belk.

## STANDARD OF REVIEW

### I.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portions of the report and recommendation to which objections are made and the basis for those objections. *Id.* After a review of the entire record, the R&R, and Plaintiff's objections, the court finds that the Magistrate Judge summarized the facts and applied the correct principles of law. Accordingly, the R&R is adopted in full and specifically incorporated into this Order.

**II.     Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On December 27, 2007, United States Magistrate Judge Robert S. Carr issued a Report and Recommendation ("R&R") to this court recommending that Belk's Motion for Summary Judgment be granted.

Regarding Manente's FMLA claim, the R&R stated that "[t]he FMLA requires that when the employee returns from FMLA leave the employer restore the employee to their former position of employment or an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." (R&R at 6.) The Magistrate Judge cited the fact that, after returning from leave, Manente had the same: (a) job title; (b) job duties; (c) supervisor; (d) salary; (e) benefits; (f) hours and schedule; and (g) location. Given all of these factors, the Magistrate Judge found that Manente had not established an issue of material fact as to whether she had not been given her

"former position of employment or an equivalent position with equivalent benefits, pay, and other terms and conditions of employment" as required by law. 29 U.S.C. § 2614(a)(1). Accordingly, the Magistrate Judge recommended that this court grant Belk's Motion for Summary Judgment on this cause of action.

Regarding Manente's claim for interference with a contractual relationship, the Magistrate Judge emphasized that Manente herself even admitted that the contractual relationship between herself and Jones (a) did not directly involve Belk at all; and (b) had expired prior to her taking leave under the FMLA when Jones had stopped providing Belk with Ralph Lauren clothing. While Manente asserts that she did receive more free clothing from Ralph Lauren after returning from FMLA leave, this was not provided by Jones, and was not provided by Belk. The Magistrate Judge concluded that "[t]here was simply no contract with which Belk could interfere." (R&R at 11.) Accordingly, the Magistrate Judge recommended that this court grant Belk's Motion for Summary Judgment on this cause of action.

## ANALYSIS

Manente has filed Objections to the Magistrate Judge's R&R.

**I.     Manente's FMLA Claim**

Under the FMLA, any employee taking FMLA leave must be restored to either the same position they left or an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The Fourth Circuit has held that an employee does not have an unqualified right to return to his or her pre-leave position. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541 (4th Cir. 2006). If an employer can show that it would not have retained an employee had he or she had not taken leave, or it would have altered the employee's position had he or she not taken leave, the employer is not entitled to reinstate the

employee to his or her prior position. *Id*. at 547. Department of Labor regulations also explicitly provide that the equivalency requirement "does not extend to de minimis or intangible, unmeasurable aspects of the job." 29 C.F.R. § 825.215. "[I]ntangible aspects of the position," such as prestige and visibility, should be excluded from the equivalency analysis. *Csicsmann v. Sallada*, 211 Fed. App'x 163, *165 (4th Cir. 2006).

Regarding her FMLA claim, Manente cites language from the Fourth Circuit which provides that, "[e]quivalent terms and conditions of employment, however, do not require equivalence with respect to 'the de minimis or intangible, unmeasurable aspects of the job.' " *Montgomery v. State*, 266 F.3d 334, 341 (4th Cir. 2001) (citations omitted). In the *Montgomery* case, the Fourth Circuit heard the case of someone who, while on FMLA leave, had been reassigned from what she felt was a "truly administrative" position to a position where she performed "the simplest, most menial of clerical functions: answering the phone, taking messages, typing simple correspondence, and the like." *Id*. However, the plaintiff in that case still received the same salary and benefits and the same job classification. The court ultimately concluded that "Montgomery's complaint focuses on precisely the sorts of de minimis, intangible, and unmeasurable aspects of a job that the regulations specifically exclude." *Id*.

In the present case, Manente attempts to distinguish Montgomery from her facts by arguing that the reassignment from selling Ralph Lauren clothing to Liz Claiborne clothing was not of the same sort of "de minimis, intangible, and unmeasurable aspects of a job." (Objections at 3.) Manente has two arguments as to why it is different. First, Manente argues that she was once again receiving benefits of free Ralph Lauren clothing from Ralph Lauren, which she would no longer have received if she was selling Liz Claiborne clothing. Second, Manente argues that her performance as a salesperson was evaluated by looking at the total amount of sales in terms of total

dollar amount of clothing sold. According to Manente, since Ralph Lauren clothing was generally higher-priced than Liz Claiborne clothing, her total sales totals would have been greatly reduced by selling Liz Claiborne, which could have possibly resulted in a negative performance evaluation.

Manente's argument plainly fails as a matter of law. Regarding her claimed resumption of the free clothing gifts she had formerly enjoyed while she had a contractual relationship with Jones, the fact that she may no longer receive these free clothing items as a result of her transfer to selling Liz Claiborne is insufficient to establish an issue of material fact on the FMLA claim. This is so for two reasons. First of all, Manente can produce no evidence whatsoever that she was going to continue to receive free clothes so long as she continued to sell Ralph Lauren brand clothes, especially in light of the fact that she admits she no longer had any contract with Jones or anyone else that provided that she would receive free clothing.

Secondly, and more importantly, any free clothing she received from Ralph Lauren was completely independent of her employment relationship with Belk. Manente has not alleged, and has produced no evidence that, Belk had any part in negotiating or agreeing to any agreement that resulted in Manente receiving free clothes as a result of her position. Manente has not even produced any evidence that Belk was aware of this situation. It would be manifestly unfair for the law to impose upon employers an equivalency requirement that takes into account not only the factors such as salary, responsibilities, location, supervisor(s), benefits, title, and hours, but also factors it may have no knowledge or control over, such as deals struck directly between the employee and a third-party.

The matter currently before the court provides a perfect illustration of this. In the present case, Belk executives, exercising their business judgment, decided their department store would be best served by scaling back their efforts to sell high-end clothing like Ralph Lauren and focus

instead on less expensive clothing like Liz Claiborne. To this end, they made a decision to reassign Manente from selling Ralph Lauren clothes to selling Liz Claiborne clothes. To claim that the law can or should either prevent Belk from doing this or impose financial liability upon Belk for doing this, simply because Manente may have had an agreement with Ralph Lauren that Belk never negotiated, agreed to, or signed, and may not have even been aware of, is simply preposterous. The equivalency requirement of the FMLA does not include these sorts of direct agreements between employees and third-parties, since such agreements are beyond the control of the employer. Accordingly, Manente's claim that Belk did not fulfill the legal requirement of providing her an "equivalent position" because she may no longer have received complimentary Ralph Lauren clothing after her return from leave fails as a matter of law.

Manente's claim that she was effectively demoted because Belk's evaluation of salespeople is based on the total dollar amount of goods sold, and selling lower-priced Liz Claiborne clothing put her at a disadvantage is also insufficient to establish an issue of material fact on her FMLA claim. Manente claims that since Ralph Lauren clothing sells for a higher price, she would have therefore sold a higher dollar amount of clothes, and received a better performance evaluation from her supervisors.

Manente has provided no evidentiary support for this claim. While the court has no special expertise in retail sales, it is among the most fundamental principles of the field of economics that as the price of a good falls, the greater quantity of that good a salesperson should be able to sell. So while Manente's point that she would accumulate a higher dollar amount of sales for every article of Ralph Lauren clothing than for every article of Liz Claiborne clothing is accepted by the court, it also stands to reason that because of the lower price, she would be able to sell more items of Liz Claiborne clothing than Ralph Lauren clothing. Manente never addresses this counterpoint to her

argument anywhere in the pleadings. In short, then, Manente's argument that her selling Liz Claiborne clothing instead of Ralph Lauren clothing would necessarily hurt her overall sales numbers does not appear to be anything more than a conclusory, self-supporting argument that is not supported by any sort of objective evidence. Had she not resigned, it seems to the court just as likely that Manente may have posted even higher sales numbers due to the lower prices, since after all this was a policy decision by the Belk department store supervisors, no doubt motivated by their desire to raise total sales numbers, to move away from higher-priced clothing like Ralph Lauren in favor of more moderately priced clothing like Liz Claiborne. Accordingly, this conclusory assertion is not sufficient to establish an issue of material fact, and is therefore not a grounds for avoiding summary judgment.

## II.     Manente's Claim for Interference With a Contractual Relationship

In order to recover on a claim for interference with a contractual relationship, South Carolina law requires that a plaintiff must demonstrate five different things: (1) the existence of a valid contract; (2) that the defendant knew of the valid contract; (3) that the defendant intentionally caused the contract to be breached; (4) there was no valid justification for defendant's actions; and (5) that the plaintiff was harmed by the breach. *Camp v. Springs Mortg. Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993).

Manente has objected to the R&R's recommendation that this court grant Belk's Motion for Summary Judgment as to Plaintiff's interference with a contractual relationship claim. Manente's two-sentence objection reads:

Further the contention that the Plaintiff is not entitled to relief under the third party interference with a contract is in error. The Plaintiff has presented the Jones contract as evidence that even though there was no agreement between the Defendant and the Plaintiff there was evidence of a practice.

(Objections at 4.)

However, regardless of whether there is practice or not, Manente has simply not shown that there was a valid contract, which is the first requirement of a valid contractual interference claim under South Carolina law. The undisputed facts of the case show that the contract between Manente and Jones ended in 2003, when the agreement between Jones and Belk expired and Jones no longer provided Ralph Lauren clothing to the department store. Manente even acknowledged that for a substantial period of time she no longer received the free clothing and other benefits she had been receiving under the contract, although she asserts she once again began receiving them, directly from Ralph Lauren, after she returned from leave. This plainly fails to meet the minimum necessary requirements of a valid contract, therefore Manente's claim fails as a matter of law.

Furthermore, Manente has also failed to meet any of the other requirements for a valid contractual interference claim. In deposition testimony, Manente acknowledged that her supervisors had no knowledge of her agreement with Jones. Therefore, Manente's claim also does not meet the second and third requirements, since Belk does not appear to have even been aware of the agreement, and since it was not aware of it, it cannot logically be held to have intentionally interfered with it. Furthermore, the record indicates that Manente's reassignment from selling Ralph Lauren clothing to selling Liz Claiborne clothing was part of a storewide strategy to increase sales, which would be a valid justification for interfering with the agreement. Finally, Manente has testified that upon leaving Belk, she immediately obtained employment at Saks Fifth Avenue making $5 per hour more than she had been making at Belk, so it is frankly hard for the court to see exactly how Belk's actions harmed Manente in any way.

Accordingly, Manente has failed to establish any issue of material fact relating to her claim that Belk interfered with her contractual relationship with Jones or Ralph Lauren, and therefore this claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the court adopts in full the recommendations of the Magistrate Judge, and **ORDERS** that the Defendant's Motion for Summary Judgment be **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 5, 2008**